# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 7 |
| LIVE WELL FINANCIAL, INC., | Case No. 19-11317 (LSS) |
| Debtor. | |
| DAVID W. CARICKHOFF, as Chapter 7 Trustee of LIVE WELL FINANCIAL, INC., | |
| Plaintiff, | |
| v. | |
| WEDBUSH SECURITIES, INC. | |
| and | Adv. Proc. No. 21-50989 (LSS) |
| JOHN DOES 1-50, | |
| Defendants. | |

## WEDBUSH SECURITIES, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION TO DISMISS ADVERSARY COMPLAINT

**POTTER ANDERSON & CORROON LLP**
Jeremy W. Ryan (No. 4057)
D. Ryan Slaugh (No. 6325)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Email: jryan@potteranderson.com
        rslaugh@potteranderson.com

**KATTEN MUCHIN ROSENMAN LLP**
Peter A. Siddiqui (admitted *pro hac vice*)
Allison E. Yager (admitted *pro hac vice*)
525 W. Monroe Street
Chicago, Illinois 60661-3693
Email: peter.siddiqui@katten.com
        allison.yager@katten.com

Julia M. Winters (admitted *pro hac vice*)
575 Madison Avenue
New York, New York 10022-2585
Email: jwinters@katten.com

*Counsel for Wedbush Securities, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...........................................................................................................1

FACTUAL BACKGROUND .......................................................................................2

LEGAL STANDARD...................................................................................................6

I.      Standard of Review Under Fed. R. Civ. P. 12(b)(6)...........................................6

II.     The Heightened Pleading Standard of Rule 9(b) Applies to Actual Fraudulent
        Transfer Claims....................................................................................................7

III.    Standard for Dismissal of Claims with Prejudice. ...............................................7

ARGUMENT ................................................................................................................8

I.      Both Count I and Count II Fail to State a Claim Upon Which Relief Can Be
        Granted.................................................................................................................8

        A.      Count I Should be Dismissed, Because it Does Not State a Claim for an
                Actual Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A)..................8

                1.      The Trustee may not rely upon the "Ponzi scheme presumption" to
                        infer fraudulent intent. ...............................................................8

                2.      Count I fails to satisfy the heightened pleading standards of Rule
                        9(b). .........................................................................................10

                        i.      The Trustee has failed to plead any badges of fraud for the
                                Transfers. .......................................................................10

                        ii.     The Trustee's allegations regarding the Debtor's intent in
                                obtaining financing from other lenders are irrelevant...................11

        B.      Count II Must be Dismissed if the Court Dismisses Count I.................12

IV.     The Complaint Should Be Dismissed with Prejudice, Because the Trustee Cannot
        Overcome the Claims' Deficiencies by Amending the Complaint.....................13

        A.      Amending the Complaint Would be Futile, Because the Trustee Will Not
                be Able to Plead the Badges of Fraud...................................................13

        B.      Amending the Complaint Would Also be Futile, Because the Complaint
                Concedes Wedbush's Complete Affirmative Defense Pursuant to Section
                548(c). ...................................................................................................14

CONCLUSION...........................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                         **Page(s)**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ....................................6

*Budhun v. Reading Hosp. and Med. Center*,
    765 F.3d 245 (3d Cir. 2014) .......................................................................................15

*Chorches for Estate of Scott Cable Comms, Inc., v. U.S. Bank, NA*,
    Case No. 11-00106, 2014 WL 5280002 (Bankr. D. Del. Oct. 15, 2014) ................13

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
    232 F.3d 173 (3d Cir. 2000) .........................................................................................6

*Foman v. Davis*,
    83 S. Ct. 227 (1962) .....................................................................................................7

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .........................................................................................6

*Image Masters, Inc. v. Chase Home Finance*,
    489 B.R. 375 (E.D. Pa. 2013) ....................................................................................15

*In re Actrade Fin. Tech. Ltd.*,
    337 B.R. 791 (Bankr. S.D.N.Y. 2005) ......................................................................12

*In re Amcad Holdings, LLC*,
    579 B.R. 33 (Bankr. D. Del. 2017) ............................................................................14

*In re Charys Holding Co., Inc.*,
    443 B.R. 638 (Bankr. D. Del. 2011) ......................................................................7, 13

*In re Crucible Materials Corp.*,
    Adv. No. 11-53884, 2012 WL 5360945 (Bankr. D. Del. Oct. 31, 2012) ............6, 13

*In re DGI Resolutions, Inc.*,
    445 B.R. 376 (Bankr. D. Del. 2011) ............................................................................6

*In re F-Squared Inv. Mgmt., LLC*,
    Case No. 15-11469 (LSS), 2019 WL 4261168 (Bankr. D. Del. Sept. 6, 2019) .........9

*In re Fedders North America, Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ....................................................................10, 11

*In re Hechinger Inv. Co. of Del.*,
    327 B.R. 537 (D. Del. 2005) ............................................................................10

*In re Norvergence, Inc.*,
    405 B.R. 709 (Bankr. D.N.J. 2009) ..................................................................8

*In re Rite Way Elec., Inc.*,
    510 B.R. 471 (Bankr. E.D. Pa. 2014) ...............................................................7

*In re Rose*,
    425 B.R. 145 (Bankr. M.D. Pa. 2010) ..............................................................9

*In re Syntax-Brillian Corp.*,
    Adv. No. 10-51389, 2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016) .................12

*In re Taneja*,
    Case No. 10-1225, 2012 WL 3073175 (Bankr. E.D. Va. July 30, 2012) ................9

*In re Zohar III, Corp.*,
    Adv. No. 20-50534, 2021 WL 2495146 (Bankr. D. Del. June 18, 2021) ................7

*Mrs. Ressler's Food Products v. KZY Logistics, LLC*,
    Case No. 2:17-02013, 2017 WL 3868703 (D.N.J. Sept. 5, 2017) ..........................14

*Mullin v. Balicki*,
    875 F.3d 140 (3d Cir. 2017) ......................................................................7, 13

*Sharp Int'l Corp. v. State Street Bank*,
    403 F.3d 43 (2d Cir. 2005) .....................................................................11, 12

*Slobodian v. U.S. ex rel. I.R.S.*,
    Case No. 1:13-cv-2677, 2014 WL 2041815 (M.D. Pa. May 12, 2014) ..................14

**Statutes**

11 U.S.C. §§ 105(a) and 363(b) .............................................................................5

11 U.S.C § 548(a)(1)(A) ................................................................................ *passim*

11 U.S.C § 548(c) .........................................................................................13, 14, 15

11 U.S.C § 550(a) .........................................................................................2, 12, 13

**Rules**

Fed. R. Civ. P. 8(a)(2) ..........................................................................................6

Fed. R. Civ. P. 9(b) ...................................................................................2, 7, 8, 10

Fed. R. Civ. P. 12(b)(6) ................................................................................6, 7, 15

Fed. R. Bankr. P. 7009 ...........................................................................................7

Fed. R. Bankr. P. Rule 9019(a) .............................................................................5

# INTRODUCTION

On June 28, 2021, David W. Carickhoff, in his capacity as the Chapter 7 Trustee (the "Trustee") of Live Well Financial, Inc. (the "Debtor" or "Live Well"), filed the *Complaint* [Adv. Dkt. No. 1] (the "Complaint")[1] in the above-captioned adversary proceeding against Wedbush Securities, Inc. ("Wedbush") and John Does 1-50.

The Trustee seeks to avoid certain prepetition payments to Wedbush identified in Paragraph 92 of the Complaint (collectively, the "Transfers") as actual fraudulent transfers. The Trustee's claims rely solely on allegations that the Debtor's former officers (as defined in the Complaint, the "Criminal Insiders") defrauded the Debtor's lenders into loaning funds in excess of the value of the underlying collateral, and ultimately were convicted or pleaded guilty to criminal charges for their actions.

While the Complaint is replete with allegations regarding the Criminal Insiders' bad acts and their efforts to profit personally at the expense of the Debtor's lenders, conspicuously absent are any allegations of the Debtor's fraudulent intent when making the Transfers. Indeed, the Complaint does not cite a single "badge of fraud" aside from conclusory allegations of insolvency. Instead, it alleges, also in conclusory fashion, that the Criminal Insiders acted with fraudulent intent in obtaining the funds allegedly used to repay Wedbush. While those other transactions may give rise to separate claims against the Debtor and the Criminal Insiders, the Trustee cannot impute the Debtor's intent in those instances to its intent when it made the Transfers. Nor can he presume that the Criminal Insiders' alleged criminal conduct is a badge of the Debtor's fraudulent intent.

---

[1] Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Complaint.

This is not a Ponzi scheme case. The Debtor ran a legitimate business and entered into legitimate financing agreements through its repo transactions and borrowed funds secured by legitimate collateral. Wedbush clearly gave value in exchange for the Transfers. Each of the Transfers was a repayment to Wedbush of a legitimate, antecedent debt, and the Complaint does not allege otherwise. As such, the Complaint cannot presume fraudulent intent with respect to the Transfers or meld the Criminal Insiders' generalized intent with the Debtor's. The Complaint must allege the Debtor's fraudulent intent with respect to each Transfer, and the Trustee fails to do that here.

As set forth below, each of the Trustee's claims should be dismissed. Count I, brought pursuant to section 548(a)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code"), (i) improperly relies on the Ponzi scheme presumption to establish intent and (ii) fails to satisfy the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure (the "Rules"). Count II, brought pursuant to section 550(a) of the Bankruptcy Code, fails as a matter of law due to the failure of Count I.

The Court should dismiss the Complaint with prejudice because allowing the Trustee to amend would be futile, as the Trustee cannot overcome the claims' deficiencies.

**FACTUAL BACKGROUND**[2]

According to the Complaint, for nine years after its founding, the Debtor was in the business of originating and servicing Home Equity Conversion Mortgages ("HECMs"). (Compl. ¶ 23.) In 2014, the Debtor expanded its business to investing and trading in HECM IO ("Home Equity Conversion Mortgage, Interest Only") bond strips, a legitimate business venture involving reverse mortgage-backed securities. (*Id.* ¶¶ 2, 24-25, 38.) To finance its bond

---

[2] Wedbush's references to the facts as stated in the Complaint are for purposes of this Motion only and should not be construed as admissions.

acquisitions (collectively, the "<u>Live Well Bonds</u>"), the Debtor entered into standard bond repurchase ("repo") agreements with various lenders. (*Id*. ¶¶ 29-34, 38.) Under these agreements, the repo lender bought securities from the Debtor, who agreed to buy them back for a specific price at a later date. (*Id*. ¶ 30.) The agreements also provided for ordinary credit limits and margin calls. (*Id*. ¶¶ 33-34.)

Like in any ordinary repurchase agreement, the purchase price was determined by applying a "haircut" to the bonds' value, with financing provided against the reduced value. (*Id*. ¶ 31.) Thus, Live Well's lenders required—both at the time of purchase and throughout the agreement—that the bonds be priced using objective and unbiased valuations. (*Id*. ¶ 35.) Accordingly, the Debtor used Interactive Data Pricing and Reference Data LLC ("<u>IDC</u>") to obtain prices for the Live Well Bonds. (*Id*. ¶ 37.) With IDC's commitment to price the Live Well Bonds, the Debtor purchased 18 HECM IO bond strips from Stifel Nicolaus for approximately $46 million, financed through legitimate repo agreements with three lenders. (*Id*. ¶ 38.)

In the beginning, IDC published objective, independent, market-based prices for the Live Well Bonds, resulting in frequent margin calls from its repo lenders in accordance with the terms of their legitimate repo agreements. (*Id*. ¶ 39.) However, according to the Complaint, IDC began accepting from the Criminal Insiders inflated bond prices in February 2015. (*Id*. ¶¶ 40-47.) The Debtor's repo lenders, including Wedbush, were unaware that IDC was no longer independently valuing the bonds. (*Id*. ¶ 47.)

Around August or September 2015, the Criminal Insiders began further manipulating the IDC published bond prices to inflate the apparent value of the Live Well Bonds pursuant to a practice they referred to as "scenario 14", resulting in a significant expansion in the Debtor's bond portfolio and its reported value. (*Id*. ¶¶ 49-53.) The Criminal Insiders would inflate the

prices of newly-acquired bonds and then engage in repo transactions with the bonds based upon the inflated values. (*Id.* ¶¶ 54-57.) Because the Criminal Insiders were marking up the bond prices, the lenders relying on the legitimacy of IDC, including Wedbush, were "unknowingly" underwater from the day they made the loans. (*Id.* ¶ 55, 59.)[3]

The Trustee alleges that the Debtor increased the amount of its borrowings from $124 million to $430 million between September 2015 and November 2016. (*Id.* ¶ 62.) However, the Trustee does not contend that all of the Debtor's borrowings were based on inflated pricing. To the contrary, the Trustee admits that the increased borrowings were based only "in part" upon the inflated bond prices. (*Id.*)

With respect to Wedbush, the Complaint does not identify the repo agreement between the Debtor and Wedbush or even indicate when Wedbush began providing financing to the Debtor; it only avers that Wedbush had extended approximately $225 million in repo loans to the Debtor by December 2016. (*Id.* ¶¶ 66-67.) According to the Complaint, in January 2017, Wedbush sought to remove some of the Live Well Bonds from its repo line of credit, but the Debtor did not have the liquidity to repurchase them. (*Id.* ¶ 70.) The Trustee acknowledges that Wedbush's repo agreement with the Debtor allowed Wedbush to require the Debtor to repurchase the bonds and that the Debtor would be in default if it did not do so. (*Id.* ¶¶ 7-8.) The Complaint alleges the Debtor had to obtain new loans from other repo lenders to get the financing necessary to pay Wedbush, but does not state whether, when, or to whom the Debtor moved bonds at that time. (*Id.* ¶ 71.) In March 2017, the Debtor moved certain Live Well Bonds from Wedbush to other lenders (including Nomura, who independently priced its bonds rather than relying on IDC pricing) using loan proceeds from Nomura, among others. (*Id.* ¶ 75.)

---

[3] However, one lender, Nomura ("<u>Nomura</u>"), priced the bonds subject to its repo agreements itself and did not use IDC. (*Id.* ¶ 66.) Thus, the values of the Live Well Bonds securing the Nomura loans were not inflated. (*Id.* ¶¶ 66, 75-76.)

Despite acknowledging that its lenders could not have known the independence of IDC's pricing was compromised, the Trustee alleges Wedbush somehow should have been suspicious about the Criminal Insiders' conduct. (*See*, *e.g. id*. ¶ 7, 66.) The Trustee bases that unfounded conclusion on (i) conversations among Wedbush and Live Well regarding its repo financing in January and August 2017 (*Id*. ¶ 68, 89) and (ii) the opening of an SEC investigation into Live Well's bond trading in March 2017 (*Id*. ¶ 74, 89).[4]

Those unsupported allegations are flatly contradicted by the Complaint itself. The Complaint acknowledges that a similarly situated repo lender, Mirae Asset Securities (USA) Inc. ("Mirae") "reasonably relied upon Live Well's certified audited financial statements and the fraudulently reported value of the bonds in making its decision to extend repo financing to Live Well" in March - July 2017. (*Id*. ¶ 85.) The Trustee also admits that Mirae "reasonably relied upon the Criminal Insiders' misrepresentation that IDC served as an independent third-party pricing service that generated market prices for the bonds based upon objective market data and market conditions." (*Id*. ¶ 86.) The Trustee further acknowledges that Mirae could not have known IDC was allowing the Debtor to set its own prices. (*Id*.) There are no facts alleged in the Complaint from which the Court could infer that Wedbush was in a different position from Mirae at the time of the Transfers.[5]

---

[4] The Trustee suggests, in conclusory fashion and without any factual support, that Wedbush was aware of the SEC investigation. (*Id*. ¶¶ 7, 74, 89.)

[5] Pursuant to the *Order Approving Motion of Chapter 7 Trustee for Approval of Litigation Support and Alignment Agreement By and Between David W. Carickhoff, in his Capacity as Chapter 7 Trustee for the Estate of Live Well Financial, Inc., and Mirae Asset Securities (USA) Inc., Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure* (the "Litigation Support and Alignment Agreement") [Bankr. Dkt. No. 256], the Trustee and Mirae have jointly retained the counsel that is pursuing this Complaint. The Complaint is surprisingly silent as to Mirae's role and interest in this action. Nonetheless, the Complaint's emphasis on Mirae's ignorance and innocence is noteworthy and underscores the Trustee's inability actually to make an intentional fraud claim here. The Complaint fails to allege Wedbush was in any different position to Mirae. The Trustee has aligned himself with a supposed fraud victim with substantially more resources than the Trustee himself, and yet cannot allege facts showing fraudulent intent. That is unsurprising given Mirae's own judicial admissions that the Criminal Insider's fraud was well hidden and not apparent until years later.

On June 10, 2019, Mirae and two of the Debtor's other repo lenders, including Flagstar Bank and Industrial and Commercial Bank of China Financial Services, LLC, filed an involuntary chapter 7 petition against the Debtor. (*Id.* ¶ 98; Bankr. Dkt. No. 1.)

## LEGAL STANDARD

### I.  Standard of Review Under Fed. R. Civ. P. 12(b)(6).

In considering a motion to dismiss, courts "accept all factual allegations as true" and construe the complaint in favor of the non-moving party. *In re DGI Resolutions, Inc.*, 445 B.R. 376, 379 (Bankr. D. Del. 2011). But alleged facts, even when accepted as true, must state a claim that is "plausible" on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading which offers "only labels and conclusions or a formulaic recitation of the elements" will not survive a motion to dismiss. *In re Crucible Materials Corp.*, Adv. No. 11-53884, 2012 WL 5360945, *3 (Bankr. D. Del. Oct. 31, 2012) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). A court must base its ruling "not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable." *Id.* (quoting *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000)).

Courts in the Third Circuit have crafted a two-part analysis for examining a complaint's sufficiency under Rule 12(b)(6). First, courts separate the factual and legal elements, accepting as true only the well-pleaded allegations and disregarding legal conclusions. *See id.* Second, courts "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id.* (quoting *Fowler*, 578 F.3d at 211). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and dismissal is appropriate. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

## II. The Heightened Pleading Standard of Rule 9(b) Applies to Actual Fraudulent Transfer Claims.

The heightened pleading standard of Rule 9(b) and Federal Rule of Bankruptcy Procedure 7009 applies to Count I's actual fraudulent transfer claim. *See In re Zohar III, Corp.*, Adv. No. 20-50534, 2021 WL 2495146, *16 (Bankr. D. Del. June 18, 2021). Rule 9(b) states, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Thus, the circumstances surrounding the fraud must be pled with particularity. *See Zohar* at *16. To satisfy this requirement, the plaintiff must plead the "date, place or time of the fraud, or through alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *In re Rite Way Elec., Inc.*, 510 B.R. 471, 480 (Bankr. E.D. Pa. 2014) (*quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)) (internal quotations omitted).

## III. Standard for Dismissal of Claims with Prejudice.

Although courts are liberal in granting leave to amend, no litigant has an absolute right to amend a complaint. *See Foman v. Davis*, 83 S. Ct. 227, 230 (1962). Courts generally consider four factors which may justify denying leave to amend, including (1) whether the proposed amendment is futile in that the plaintiff does not state a viable case, (2) whether the proposed amendment comes after undue delay, (3) whether the proposed amendment is the product of bad faith or dilatory motive, and (4) additional equities, such as judicial economy and burden on the court. *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017). An amendment is futile if the complaint, as amended, would still fail to state a claim upon which relief would be granted. *See In re Charys Holding Co., Inc.*, 443 B.R. 638, 642 (Bankr. D. Del. 2011).

## ARGUMENT

### I. Both Count I and Count II Fail to State a Claim Upon Which Relief Can Be Granted.

The Complaint seeks to avoid the Transfers as actual fraudulent transfers pursuant to sections 548(a)(1)(A) and 550(a) of the Bankruptcy Code. Count I and Count II should be dismissed, because they both fail to state a claim upon which relief can be granted.

#### A. Count I Should be Dismissed, Because it Does Not State a Claim for an Actual Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A).

Count I of the Complaint fails to plead the Debtor's intent to hinder, delay or defraud its creditors. Specifically, the Complaint improperly relies on the "Ponzi scheme presumption" to establish intent and fails to satisfy the heightened pleading standards of Rule 9(b) with respect to the Transfers, relying instead on the Criminal Insiders' alleged fraud in inducing other lenders to enter into repo loans.

##### 1. The Trustee may not rely upon the "Ponzi scheme presumption" to infer fraudulent intent.

To establish a claim for an actual fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code, a plaintiff must show the transferor made the transfer with "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). Instead of pleading the Debtor's intent when making the Transfers, the Complaint only contains unsupported comparisons of the Debtor's business to a "*de facto* Ponzi scheme" (Compl. ¶¶ 6, 65, 93, 116), concluding that the Transfers should be "presumed" to have been made with actual fraudulent intent. (*Id.* ¶¶ 93, 116.)

In a Ponzi scheme case, a transfer made in furtherance of the Ponzi scheme is presumed to have been made with fraudulent intent, making it unnecessary for the plaintiff to rely on the badges of fraud. *See In re Norvergence, Inc.*, 405 B.R. 709, 732 (Bankr. D.N.J. 2009). But this is

not a Ponzi scheme case. To establish a Ponzi scheme, the Trustee must establish: (1) deposits were made by investors, (2) the debtor conducted little or no legitimate business operations, (3) the purported business operation produced little or no profits or earnings, and (4) the source of payments to investors was from cash infused by new investors. *Id*. at 732-33. The focus on the illegitimacy of the underlying business is crucial:

> In a Ponzi scheme, there is no legitimate business venture. The purpose of the venture is to perpetrate and perpetuate a fraud. The ostensible transactions are bogus. False books and records are maintained. False financial statements are created. There are false communications with investors and the public. The aura of a legitimate, well-founded business masks the fact that there is no business, just a fraud.

*In re Taneja*, Case No. 10-1225, 2012 WL 3073175, *6 (Bankr. E.D. Va. July 30, 2012). Indeed, in *In re F-Squared Inv. Mgmt., LLC*, Case No. 15-11469 (LSS), 2019 WL 4261168, at *13 (Bankr. D. Del. Sept. 6, 2019), this Court declined to find the existence of a Ponzi scheme where (i) the trustee had not alleged the debtors' operations, as opposed to certain of its business practices, were illegal or that the debtors were placing customers' funds in illegitimate investment vehicles and (ii) the debtors had "operated an otherwise legitimate business."

Similarly, here, the Trustee does not allege the existence of a Ponzi scheme. To the contrary, the Trustee admits the Debtor was involved in various legitimate lines of business, including originating and servicing HECMs and trading bonds. (Compl. ¶¶ 23-24, 38.) The only allegation even remotely comparable to an element of a Ponzi scheme is that the Criminal Insiders used "new repo loans . . . to generate the funds necessary to pay off its older repo lenders." (*Id*. ¶ 93.) However, using the proceeds of one loan to pay another does not on its own establish a Ponzi scheme. *See In re Rose*, 425 B.R. 145, 155 (Bankr. M.D. Pa. 2010) (finding Ponzi scheme presumption inapplicable where "only attributes of a Ponzi scheme are that [debtor] borrowed money from other parties at high rates of interest and then used the money to

repay other loans."). Accordingly, the Trustee has failed to allege the existence of a Ponzi scheme and is not entitled to a presumption that the Debtor's intent was to defraud.

### 2. Count I fails to satisfy the heightened pleading standards of Rule 9(b).

Because the Debtor's intent to defraud cannot be presumed in this case, the Trustee must plead with specificity the Debtor's "actual intent to hinder, delay or defraud" its creditors with respect to each Transfer. 11 U.S.C. § 548(a)(1)(A); Fed. R. Civ. P. 9(b). Direct evidence of fraudulent intent is rarely available, so courts rely on "badges of fraud" to infer fraudulent intent. *See In re Fedders North America, Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009). These badges include (1) the relationship between the debtor and the transferee, (2) the consideration for the conveyance, (3) the insolvency or indebtedness of the debtor, (4) how much of the debtor's estate was transferred, (5) the reservation of benefits, control or dominion by the debtor, and (6) the secrecy or concealment of the transaction. *In re Hechinger Inv. Co. of Del.*, 327 B.R. 537, 551 (D. Del. 2005). "Although the presence of a single factor, i.e. badge of fraud, may cast suspicion on the transferor's intent, the confluence of several in one transaction generally provides conclusive evidence of an actual intent to defraud." *Fedders*, 405 B.R. at 545 (granting motion to dismiss where only pled badge of fraud was insolvency).

### i. The Trustee has failed to plead any badges of fraud for the Transfers.

The Complaint does not plead a single badge of fraud with respect to any of the specific Transfers. Instead, it attempts to create the appearance of fraudulent intent by repeating the same conclusory statements regarding the Criminal Insiders' overall bond inflation scheme. (*See*, *e.g.*, Compl. ¶¶ 3, 43, 48, 56, 57, 62, 65, 75, 77, 93.) However, there are no allegations regarding any insider or otherwise inappropriate relationship between the Debtor and Wedbush at the time of any of the Transfers. There are no allegations challenging the adequacy of the consideration

provided by Wedbush for any of the Transfers. There are no allegations that the Debtor transferred a significant portion of its estate when it made any of the Transfers. There are no allegations that that the Debtor retained possession or control of any of the transferred funds. There are no supported allegations of concealment by the parties of any of the Transfers, save for a handful of conclusory statements made without any supporting detail or specificity. (*See*, *e.g.*, *id*. ¶¶ 1, 11, 93, 115, 116.) Even those statements do not specify which Transfer is being discussed. (*See id*.) And, although the Trustee alleges (albeit in conclusory fashion) that the Debtor was insolvent, that badge alone is insufficient to establish intent to defraud. *See Fedders*, 405 B.R. at 545 (granting motion to dismiss where only badge of fraud pled was insolvency).

> ### ii. The Trustee's allegations regarding the Debtor's intent in obtaining financing from other lenders are irrelevant.

The Trustee further attempts to blur the lines of intent by focusing not on the Debtor's intent in making each individual Transfer, but instead on the Debtor's efforts to raise the funds to repay Wedbush's valid antecedent loan. Specifically, the Trustee alleges that the Transfers were made with intent to defraud "because Live Well resorted to defrauding its other repo lenders to obtain the funds necessary" to make them. (Compl. ¶ 115.) That allegation is not sufficient.

The Trustee's efforts are analogous to those rejected in *Sharp Int'l Corp. v. State Street Bank*, 403 F.3d 43 (2d Cir. 2005). In *Sharp*, the debtor's officers created a scheme to falsify financial information to borrow funds from various lenders. *Id*. at 46. When the defendant became suspicious of the debtor's activities, the debtor repaid the defendant's loans with financing from other banks it defrauded. *Id*. at 47-48. The officers involved ultimately pled guilty to criminal fraud. *Id*. at 48. The trustee in the bankruptcy case brought a claim to avoid the

loan repayment made by the debtor to the defendant as an intentional fraudulent transfer.[6] *Id*. The

bankruptcy court dismissed the complaint, finding the trustee failed to state a claim based on his

failure to allege the badges of fraud. *Id*. On appeal to the Second Circuit, the trustee argued the

bankruptcy court should not have focused on the badges of fraud because the fraud had been so

clearly established. *Id*. at 56. The Second Circuit disagreed: "[T]he intentional fraudulent

conveyance claim fails for the independent reason that Sharp inadequately alleges fraud with

respect to the transaction that Sharp seeks to void, *i.e.*, Sharp's 12.25 million payment to

[defendant] . . . *The fraud alleged in the complaint relates to the manner in which Sharp*

*obtained new funding . . . not Sharp's subsequent repayment of part of the proceeds to*

*[defendant]*." *Id* (emphasis added).

The same is true here. The insufficient allegations of intent focus on the Criminal

Insiders' intent with respect to defrauding its other lenders, rather than on the Debtor's intent in

repaying Wedbush's valid antecedent loans. (*See*, *e.g.*, Compl. ¶¶ 6, 9, 10, 64, 65, 75, 77, 82-88,

90, 93, 115.)

The Trustee must allege intent using the badges of fraud for each individual Transfer. He

has failed to do so. Accordingly, the Complaint's allegations are insufficient to support an actual

fraudulent transfer claim pursuant to section 548(a)(1)(A), and Count I should be dismissed.

### B.     Count II Must be Dismissed if the Court Dismisses Count I.

Section 550(a) of the Bankruptcy Code provides for the recovery of a transfer only to the

extent that a transfer is avoided pursuant to section 548, among others. 11 U.S.C. § 550(a).

---

[6] Though the claims in *Sharp* were brought pursuant to New York fraudulent conveyance law, courts have found its reasoning applies in the context of actual fraudulent transfer claims brought pursuant to section 548. *See In re Actrade Fin. Tech. Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005) ("[a]lthough *Sharp* only directly addressed pleading under the DCL [New York's Debtor and Creditor Law], there is no reason why its reasoning should not be applicable to claims of intentional fraudulent conveyance under the Bankruptcy Code as well); *In re Syntax-Brillian Corp.*, Adv. No. 10-51389, 2016 WL 1165634, *4 (Bankr. D. Del. Feb. 8, 2016).

Where, as here, an avoidance claim fails as a matter of law, "the related claims to recover the value of the transfers at issue under section 550(a) are likewise barred." *Crucible Materials Corp.*, 2012 WL 5360945 at *9, n. 6 (dismissing both section 548 and 550 claims). Accordingly, because Count I fails, Count II fails as a matter of law as well. *See also*, *Chorches for Estate of Scott Cable Comms, Inc., v. U.S. Bank, NA*, Case No. 11-00106, 2014 WL 5280002, *5 (Bankr. D. Del. Oct. 15, 2014) ("[B]ecause the avoidance claim is dismissed, [the count], seeking recovery of the avoided transfer pursuant to section 550, must also be dismissed").

## IV. The Complaint Should Be Dismissed with Prejudice, Because the Trustee Cannot Overcome the Claims' Deficiencies by Amending the Complaint.

The Complaint should be dismissed with prejudice, and leave to amend the Complaint should not be granted, because any amendment would be futile in that (i) the Trustee cannot credibly plead the badges of fraud, and (ii) the Complaint admits that the underlying repo loans issued by Wedbush were incurred legitimately, establishing Wedbush's complete, affirmative defense pursuant to section 548(c).

### A. Amending the Complaint Would be Futile, Because the Trustee Will Not be Able to Plead the Badges of Fraud.

Leave to amend a complaint may be denied if the amendment would be futile. *See Mullin v. Balicki*, 875 F.3d at 149-50. An amendment is futile if the complaint, as amended, would still fail to state a claim upon which relief would be granted. *See In re Charys Holding Co., Inc.*, 443 B.R. 638, 642 (Bankr. D. Del. 2011).

Here, any amended complaint would still fail to state a claim for an actual fraudulent transfer under section 548(a)(1)(A) because the key badges of fraud simply are not present. First, the Debtor and Wedbush are not affiliates or insiders of one another, a fact which is not and cannot be not controverted by the Trustee. Second, Wedbush provided adequate consideration for the Transfers, which were made pursuant to an arms' length repo agreement. The Trustee has

not and cannot allege that Wedbush did not provide the agreed-upon financing to the Debtor under that agreement. To the contrary, the Trustee acknowledges that Wedbush provided financing to Live Well. (*See*, *e.g.*, Compl. ¶ 18, 66.) Third, the Trustee has not and cannot allege the majority of the Debtor's estate was transferred. Fourth, the Trustee has not and cannot allege the Debtor retained any benefit, control, or dominion of the funds transferred to Wedbush. To the contrary, once the funds were repaid to Wedbush, they were applied to the applicable loan and the Debtor retained no interest in the funds whatsoever. And fifth, the Transfers were not concealed. As noted above, the means by which the Debtor obtained the funds to make the Transfers is irrelevant to whether the Transfers themselves were concealed. The only badge of fraud the Trustee could, upon amendment, plausibly plead is the Debtor's insolvency. But, as noted above, that is not sufficient to establish actual intent to defraud.

> **B.** **Amending the Complaint Would Also be Futile, Because the Complaint Concedes Wedbush's Complete Affirmative Defense Pursuant to Section 548(c).**

Amending the Complaint would also be futile, because the Trustee has already admitted that the Debtor's obligations under the repo agreement with Wedbush were legitimate, giving rise to Wedbush's complete affirmative defense pursuant to section 548(c).

When a complaint admits facts which themselves would defeat the claims asserted, leave to amend should be denied. *See*, *e.g.*, *In re Amcad Holdings, LLC*, 579 B.R. 33, 42 (Bankr. D. Del. 2017) (dismissing constructive fraudulent transfer claim with prejudice where complaint admitted transfers were repayments of legitimate loans and thus would not be able to show lack of reasonably equivalent value); *Slobodian v. U.S. ex rel. I.R.S.*, Case No. 1:13-cv-2677, 2014 WL 2041815, *5 (M.D. Pa. May 12, 2014) (dismissing fraudulent transfer claim with prejudice where leave to amend would be futile based on trustee's admission that transfers were made on account of antecedent debt); *Mrs. Ressler's Food Products v. KZY Logistics, LLC*, Case No.

2:17-02013, 2017 WL 3868703, *4 (D.N.J. Sept. 5, 2017) (dismissing claim with prejudice where contract at issue expressly precluded claim); *Budhun v. Reading Hosp. and Med. Center*, 765 F.3d 245, 259-60 (3d Cir. 2014) (denying leave to amend complaint where complaint conceded facts defeating the claim). Here, the Complaint admits the legitimacy of the repo agreement and thus concedes Wedbush's defense under section 548(c).

Section 548(c) of the Bankruptcy Code provides that "a transferee or obligee of such a transfer or obligation that takes for value and in good faith . . . may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation." 11 U.S.C. § 548(c). Although good faith is an affirmative defense for which the transferee bears the burden of proof, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense … appears on its face." *Image Masters, Inc. v. Chase Home Finance*, 489 B.R. 375, 391 (E.D. Pa. 2013) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

Here, the Trustee has not alleged that the repo agreements were themselves fraudulent. To the contrary, the Trustee admits the legitimacy of the terms of the Live Well's repo agreements with its lenders throughout the Complaint. (*See*, *e.g.*, Compl. ¶¶ 29-34.) Moreover, the Complaint itself establishes that Wedbush gave value pursuant to the repo agreements, and that Wedbush and the Debtor's other lenders were unaware of the Criminal Insiders' ongoing bond inflation scheme. (*See id*. ¶¶ 47, 55, 59, 85, 86.) Indeed, the Complaint acknowledges that a similarly situated creditor "reasonably relied" on the Criminal Insiders' misrepresentations of the Transfers. (*Id*. ¶ 86.) Accordingly, amending the Complaint would be futile and the Complaint should be dismissed with prejudice.

## **CONCLUSION**

For these reasons, the Complaint should be dismissed with prejudice.

Dated: September 17, 2021
Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ D. Ryan Slaugh*
Jeremy W. Ryan (No. 4057)
D. Ryan Slaugh (No. 6325)
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
           rslaugh@potteranderson.com

-and-

Peter A. Siddiqui (admitted *pro hac vice*)
Allison E. Yager (admitted *pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe Street
Chicago, Illinois 60661-3693
Telephone: (312) 902-5200
Facsimile:  (312) 902-1061
Email: peter.siddiqui@katten.com
           allison.yager@katten.com

-and-

Julia M. Winters (admitted *pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
575 Madison Avenue
New York, New York 10022-2585
Telephone: (212) 940-8800
Facsimile:  (212) 940-8776
Email: jwinters@katten.com

*Counsel for Wedbush Securities, Inc.*